IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAR 19 2012
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

CHRISTA SCHULTZ and DANNY )
SCHULTZ, both Individually and as )
Parents and Guardians of Minor Child )
C.S., a Minor (CORWYN SCHULTZ, )
now an Adult and Formerly a Student )
in the Medina Valley Independent )
School District); and TREVOR )
SCHULTZ, Individually, )
    )
    Plaintiffs, )
    )
V. ) CIVIL ACTION NO. SA-11-CA-422-FB
    )
MEDINA VALLEY INDEPENDENT )
SCHOOL DISTRICT, )
    )
    Defendant. )

## NON-KUMBAYA ORDER

### THE *HOMO SAPIEN* SAGA CONTINUES

Before the Court are plaintiffs' Motion to Enforce Settlement Agreement (docket no. 137), defendant's response (docket no. 138) and plaintiffs' reply (docket no. 139) to defendant's response. Plaintiffs ask the Court to enforce the settlement agreement and redress recent alleged violations by the Medina Valley Independent School District ("MVISD") superintendent and director of the high school marching band ("respondents").

On February 9, 2012, the Court approved the parties' settlement agreement. Observing the Court would retain jurisdiction to enforce it for the next ten years, the Court urged the parties to "be tolerant of the beliefs of others and abide by the standards they have set for themselves." (Docket no. 136, at page 2). To ensure the parties promote respect for and compliance with its terms, the settlement agreement contains a non-disparagement provision: "School District Personnel will not disparage the Plaintiffs."

Hours after the Court approved the settlement agreement, the MVISD superintendent gave a televised interview and, among other things, stated "It is a witch hunt–[t]hat's all this has been." Stephanie Serna, *Medina Valley ISD Settled Prayer Debate*, KSAT.com (February 9, 2012, 06:09:54 PM CST), http://www.ksat.com/news/Medina-Valley-ISD-settles-prayer-debate/-/478542/8623396/-/5pyfog/-.) (last visited March 19, 2012). The superintendent also inaccurately stated "[t]hey wanted our teachers to stop wearing crosses." Id. MVISD responds that the superintendent referred to the "lawsuit" as a "witch hunt" because plaintiffs' counsel conducted an "excessively long and harassing" inspection of the high school. MVISD also reports that the superintendent was under the "mistaken impression that plaintiffs' request in the lawsuit to prohibit the display of religious objects or symbols included jewelry." In reply, plaintiffs point out that the lawsuit and plaintiffs are inextricably intertwined.[1]

On February 17, 2012, one of the directors of the high school marching band accessed Facebook. While commenting on the page of a current MVISD student, he said "[d]on't get me started on the lies and false accusations your friend [referring to Corwyn Schultz] made over last years['] issues." Calling someone a liar, if proven, could be actionable libel. In response, the band director invokes truth as a defense.

The band director also "liked" a comment from a recent graduate proposing: "There should be a disclaimer after a prayer that says: 'No atheists or anti-religious activists were harmed in the recitation

---

[1] For those not familiar with this matter, the Court's order, opinion and Appendix II can be found at *Schultz v. Medina Valley Indep. Sch. Dist.*, Civil Action No. SA-11-CA-422-FB, 2012 WL 517518 (W.D. Tex. Feb. 9, 2012); *Schultz v. Medina Valley Indep. Sch. Dist.*, Civil Action No. SA-11-CA-422-FB, 2012 U.S. Dist. LEXIS 19397 (W.D. Tex. Feb. 9, 2012); and the Court's website: www.txwd.uscourts.gov.

of this prayer.'" The band director responds that liking a comment on Facebook which "clearly was intended as a joke is not making an affirmative statement, much less a disparaging one."

Like a good cook, the Court has purposely let this latest matter dished up to the Court simmer for several weeks. The reason for delay was to see if further allegations were to be made once the emotions of the moments and media attention following the settlement agreement had subsided. The Court has not been made aware of any.

Silence is golden.

Silence would also have been the better choice for six lawyers who paid a dear price and lost their law licenses for, among other things, talking too much:

President Richard Nixon: recorded conversations resulting in disbarment for improperly obstructing the FBI investigation of the Watergate scandal.[2]

United States Attorney General John Mitchell: disbarred after he was convicted of (1) conspiracy to commit offense or to defraud the United States; (2) influencing or injuring an officer, juror or witness; (3) false declarations before a grand jury or court, and (4) perjury for his role in the Watergate scandal.[3]

. President Bill Clinton: law license suspended for five years after a federal court found his false, misleading, and evasive deposition testimony regarding relations with a White House intern amounted to civil contempt.[4]

---

[2] *Matter of Nixon*, 385 N.Y.S.2d 305, 307 (N.Y. App. Div. 1976).

[3] *In re Mitchell*, 370 N.Y.S.2d 99, 100-01 (N.Y. App. Div. 1975); *see also United States v. Mitchell et al.*, Case No. 74-110 (D.D.C. Feb. 21, 1975).

[4] *Neal v. Clinton*, No. Civ-2000-5677, 2001 WL 34355768, at *3 (Ark. Cir. Jan. 19, 2001); *see also Jones v. Clinton*, 36 F. Supp. 2d 1118, 1131 (E.D. Ark. 1999).

Texas Attorney General Dan Morales: resigned membership to the State Bar of Texas and disbarred by the United States Supreme Court after he was convicted of mail fraud and filing false tax returns.[5]

I. Lewis "Scooter" Libby: disbarred after he was found guilty of two counts of perjury, one count of obstruction of justice in a grand jury investigation, and one count of making false statements to federal investigators.[6]

Judge Samuel Kent: resigned membership to the State Bar of Texas after he was convicted of obstruction of justice for lying to investigators regarding sexual abuse of female staff members.[7]

The Court takes no pleasure in holding contempt hearings or sanctioning violations of court orders. Indeed, in thirty-three years of Texas and United States judicial service, the Court recalls only four instances of threatening or imposing sanctions, all of which involved parties or lawyers speaking words better left unspoken. Or as grandmothers and moms have taught for generations: "If you can't say something nice, don't say anything at all." The motion, response and reply now pending before the Court would be instance number five.

The four previous events may be instructive to the parties:

1. Two usually gentlemanly lawyers continued to pick at each other verbally. The Court threatened to have United States Marshals take the two attorneys in front of the Alamo

---

[5] *In the Matter of Daniel C. Morales*, Misc. No. 03-9205 (Tex. Dec. 15, 2003); *In re Disbarment of Morales*, 550 U.S. 954, 954 (2007); *see also United States v. Morales et al.*, No. 1:03-CR-86-SS (W.D. Tex. Oct. 31, 2003).

[6] *In re I. Lewis Libby*, 945 A.2d 1169, 1169 (D.C. 2008); *see also United States v. I. Lewis Libby*, Case No. 2005-CR-00394-RBW (D.D.C. Jun. 5, 2007).

[7] *In the Matter of Samuel B. Kent*, Misc. No. 09-9060 (Tex. Apr. 28, 2009); *see also United States v. Samuel B. Kent*, Case No. 4:08-CR-596-RV (S.D. Tex. May 11, 2009).

Case 5:11-cv-00422-FB   Document 140   Filed 03/19/12   Page 5 of 7

and be required to kiss each other on the lips. They quickly apologized and the unprofessional verbal sparring ceased.

2. On the other hand, two lawyers, notwithstanding the Court's admonitions and the jury's obvious displeasure, continued their antics. Because they were acting like third graders, the Court ordered them put in "time out" for a portion of the trial. The misbehavior ceased, and the jury was quite pleased, much as school officials are pleased when students obey the rules and follow directions.

3. A citizen, blessed to be an American, wrote to the Court that he would serve as a juror only if he were paid $100 per hour because of his "importance" to his business. Upon being offered chauffeur service and room and board provided by the United States Marshals Service if he did not appear at the appointed time, the citizen timely came to jury service and apologized.

4. A young man once disagreed with the Court's ruling as it affected someone with whom the individual had some sort of familial interest. After dropping the F-bomb in open court after the Court's ruling, the young man spent three days in jail.

While Hollywood once proposed that "love means never having to say you're sorry,"[8] life and litigation offer more realistic approaches to resolving disputes and avoiding a lengthy court hearing on the allegations and responses presently before the Court. Surely, the parties and counsel have more constructive things to do.

---

[8] LOVE STORY (Paramount Pictures 1970).

5

The Court does not expect the parties to hold hands and sing "Kumbaya" around a campfire beside the Medina River. Nor does the Court expect the respondents superintendent and band director to engage in a public spectacle of self-flagellation for communicating words better left unsaid.

Moreover, the Court does not expect plaintiffs to become traditional Trinitarian Christians, though the Court suggests plaintiffs might follow the moral and civility lessons of Matthew 5:39 ("if someone strikes you on the right cheek, turn to him the other also") and a portion of "Essay on Criticism" ("to err is human; to forgive, divine").[9]

Counsel are hereby ordered to certify to the Court that plaintiffs and respondents superintendent and band director have read this order.

Accordingly, respondents are given the opportunity, within ten days of this order, to sign the following statement, privately and personally, with delivery to be made to counsel for the Medina Valley Independent School District:

> "I apologize for statements I made, which were interpreted by plaintiffs as disparaging towards them. I will abide by the Settlement Agreement and Release entered on February 9, 2012."

If the statements are timely received, counsel for Medina Valley Independent School District shall convey the same to plaintiffs' counsel. Plaintiffs, within ten days of notification of respondents' signed statements, shall sign, privately and personally, with delivery to plaintiffs' counsel:

> "Your apology is accepted. I will abide by the Settlement Agreement and Release entered on February 9, 2012."

---

[9] ALEXANDER POPE, ESSAY ON CRITICISM 77 (Alfred S. West, ed. 1908).

If the statements are timely received, counsel for plaintiffs shall convey the same to counsel for Medina Valley Independent School District.

If the Court's suggestion is acted upon, counsel shall so certify to the Court on or before May 1, 2012, and the Court will find that any alleged contempt by respondents has been purged. If no certification is received, the matter will be set for a show cause hearing.

Finally, the Court reminds the parties of the Fifth Amendment to the United States Constitution which provides in part that "no person shall be compelled in any criminal case to be a witness against himself." While it is invoked for criminal prosecutions, its underlying premise is instructive for *Homo sapien* relationships in general: Trouble does not come from words unspoken, particularly in this age of e-mails, tweets, cameras and recorders.

It is so ORDERED.

SIGNED this 19th day of March, 2012.

FRED BIERY
CHIEF UNITED STATES DISTRICT JUDGE